UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CSC HOLDINGS, LLC, *a wholly owned subsidiary of Altice, USA*,

                            Plaintiff,

          -against-

INTERNATIONAL BROTHERHOOD OF ELECTRICIANS, LOCAL 1049,

                           Defendant.
-----------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 21-6848 (JS)(ARL)

**LINDSAY, Magistrate Judge:**

Before the Court is the motion of the defendant, International Brotherhood of Electricians, Local 1049 (the "Union"), seeking to confirm an arbitration award pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the cross-motion of the plaintiff, CSC Holdings LLC ("CSC"), seeking to vacate that award. For the reasons set forth below, the Court respectfully recommends that the Union's motion to confirm the arbitration award be granted and CSC's cross-motion to vacate the arbitration award be denied.

## BACKGROUND

### A.  Factual Averments

### 1.  The Collective Bargaining Agreement

CSC and the Union are parties to a collective bargaining agreement covering technicians employed by CSC out of its Bethpage, New York facility ("CBA").[1] Compl. ¶ 1. The current term of the CBA is June 17, 2019 through March 15, 2023. *Id.* Ex. 1. Article XIX of the CBA sets forth the overtime policies and procedures that apply to bargaining unit employees. *Id.*

---

[1] The facts are taken from the record submitted by the parties and are undisputed unless otherwise noted.

Specifically, Article XIX provides, in pertinent part:

> Section 2: Overtime Pay Rates. . . .
>
> (E) Overtime on a Holiday. When an employee works on a holiday listed in [CSC's] annual Holiday Schedule, the employee will receive twice the employee's regular hourly rate (i.e., double time) for all hours worked on the holiday, as well as eight (8) hours of holiday pay at the regular rate of pay. . ..
>
> Section 8: Management of Overtime. [CSC] shall assign and manage overtime in its discretion in accordance with the provisions set forth in this Article. [CSC] may also modify or cancel scheduled overtime in its discretion. [CSC] has the right to modify or change any of the rules, policies or procedures set forth in this Article from time to time, provided that such modification or change applies in the same manner to similarly situated non-bargaining unit employees employed by [CSC] in the State of New York, if any. In the event [CSC] intends to modify or change any of the rules, policies or procedures set forth in this Article, [CSC] shall provide the Union with thirty (30) calendar days' advanced notice of the proposed modification or change. Within this thirty (30) day notice period, the Union may request a meeting with [CSC], at which [CSC] and the Union shall discuss any suggestions the Union may have with respect to the proposed modification or change and/or any alternatives the Union may suggest. At the expiration of the thirty (30) days referred to above, the final decision with respect to the modification or change and any alternatives proposed shall be that of [CSC].

*Id.* The CBA also contains an arbitration provision. Article XXIX, Section 2 provides:

> If a grievance which is subject to arbitration under the terms of this Agreement is properly appealed to arbitration, representatives of [CSC] and the Union shall select an arbitrator from a panel requested and received from the American Arbitration Association (AAA) in New York in accordance with the Labor Arbitration Rules of AAA, inclusive of Rule 10, as such rules may be amended from time to time. The Arbitration shall be conducted pursuant to AAA rules. . ..
>
> The decision of the arbitrator shall be final and binding on [CSC], the Union and the bargaining unit employee(s) without either party waiving its right to a court review. The arbitrator shall have no authority to expand the grievance beyond the written grievance the parties have submitted for arbitration. The arbitrator shall only have the authority to determine whether [CSC] has violated a specific provision of this Agreement and if so, what shall be the remedy. The arbitrator may not overrule the judgment of [CSC] with respect to any matter on which the terms of this Agreement have not expressly limited the judgment of [CSC]. The arbitrator shall have no right to amend, modify, nullify, ignore, add to or imply things into the provisions of this Agreement, or

2

>
> impose upon any party hereto a limitation or obligation not provided for in this Agreement. . ..

*Id.*

### 2. The Parties' Dispute

On March 23, 2021, CSC notified the Union, during a call, that it intended to implement several policy changes effecting certain bargaining unit employees, including a change to the holiday overtime premium to be paid when an employee worked on a designated company holiday. CSC Mem. Ex. 1, ECF No. 21-1, 52-63. As indicated above, at the time the change was proposed, employees were entitled to receive twice their hourly rate of pay for all hours worked on a holiday, in addition to 8 hours of holiday pay. *Id.* In a document entitled AUSA Field Operations – East Policy Harmonization, CSC advised that going forward, bargaining unit employees would only receive a premium multiplier of 1.5 times their hourly rate of pay for all hours worked on a holiday, in addition to the 8 hours of holiday pay. *Id.* ECF No. 21-1, 56.

On March 26, 2021, Rick Fridell ("Fridell"), Assistant Business Manager for the Union, emailed a representative of CSC stating that it was the Union's position that the contractual language set forth in Article XIX, Section 2(E) ("Overtime on a Holiday") could not be changed. *Id.* ECF No. 21-1, 77-8. In response, CSC re-sent a notice it had also emailed on March 23 and referred the Union to the following slide in the AUSA Field Operations – East Policy Harmonization:

**Pay for Holiday Worked on 9 Company Holidays**

|  | Current | Future |
|---|---|---|
| Eligible Employees | • All non-exempts | • All non-exempts |
| Compensation | • Calculated at 3x (holiday pay plus regular hourly rate for any hours worked on the Company holiday) | • Calculated at 2.5x (holiday pay plus 1.5x regular hourly rate for any hours worked on the Company holiday) |

3

| Timekeeping Action | • N/A | • Select the "HWD- Holiday Worked (1.5 Time)" Time Reporting Code and enter the punch times of the actual hours worked |
|---|---|---|

*Id.* ECF No. 21-1, 76-89.

On March 30, 2021, in response to additional correspondence from the Union objecting to the policy change, Stephanie Dalton ("Dalton"), CSC's Labor Relations Manager, mailed Fridell a second and more formal notice of the intended change. *Id.* ECF No. 21-1, 64-5, 91. The March 30 Notice provided:

> Pursuant to Article XIX, Overtime, Section 8 of the parties' collective bargaining agreement, we are providing [the Union] with 30 days' advance notice that [CSC] intends to change its policy regarding overtime pay on a holiday (Article XIX, Section 2(E)). Effective as of May 1, 2021, employees within [the Union] bargaining unit who are required to work on a [CSC-designated] holiday will be paid holiday pay in addition to l.5x their regular rate of pay (i.e., a total of 2.5x their regular rate of pay for any hours worked on a holiday).
>
> This change is clearly within the discretion of [CSC]. Article XIX, Section 8, is clear (as were the discussions at the bargaining table) that [CSC] "has the right to modify or change any of the rules, policies or procedures set forth in [Article XIX] from time to time, provided that such modification or change applies in the same manner to similarly situated non-bargaining unit employees employed by [CSC] in the State of New York, if any." There is no question that Holiday overtime pay is one of the rules/policies/procedures set forth in Article XIX specifically Section 2(E). This change applies to all similarly-situated New York employees, and, in fact, has already gone into effect for most employees.
>
> Further, [CSC] has also the right to make this change under Management Rights, Article V Section I of that Article clearly states that "except to the extent expressly abridged or modified by a specific provision of the Agreement . . . [CSC] alone shall have the authority to determine and direct the policies and methods of operating the business." See also, Article V, Section l(E) ([CSC] has "the right to establish, modify, interpret, eliminate and enforce compliance with all [CSC] policies"). The only "abridgement" or "modification" in the Agreement regarding [CSC's] right to change its

4

> overtime policy is the obligation to provide the Union with at least 30 days' notice, which we are now providing.
>
> In accordance with Article XIX, Section 8, please let us know if the Union would like to meet to discuss this change and, if so, please provide us with suggested dates.

*Id.* ECF No. 21-1, 91.

Although the Union was given more than the required 30-day notice and was invited to meet with CSC representatives to discuss the proposed change, the Union did not request a meeting. Pl.'s Mem. at 5. Instead, the Union filed a grievance on April 6, 2021, alleging that CSC had violated the CBA when it changed the pay treatment for hours worked on a holiday. *Id.* ECF No. 21-1, 93-4. As such, on April 20, 2021, the CSC and the Union engaged in a step one grievance meeting required under the CBA. *Id.* ECF No. 21-1, 96, 105-6. Five days later, CSC notified the Union that it had considered the objections discussed during the meeting and determined that it was not violating the CBA. *Id.* The following day, on April 26, 2021, the Union sent the AAA a Demand for Arbitration. *Id.* ECF No. 21-1, 98-9.

The AAA held the matter in abeyance while the parties continued to engage in the required grievance process. Pl.'s Mem. at 6. On May 12, 2021, the parties then engaged in a step two grievance meeting to again review the facts surrounding the filed grievance. *Id.* ECF No. 21-1, 105-6. Once again, on May 21, 2021, CSC notified the Union that it had considered the objections discussed during the second meeting and determined that it was not violating the CBA. *Id.*

### 3. The Arbitration Hearing

On September 10, 2021, an arbitration hearing was conducted before Randall M. Kelly ("Kelly"). Compl., Ex. 2. Kelly issued an award on November 29, 2021, sustaining the Union's grievance. *Id.* Of particular note, Kelly found that while the CBA affords CDC the

5

right to modify or change "any of the rules, policies or procedures" set forth in Article XIX, the holiday overtime multiplier was not one of those "rules, policies or procedures." *Id.* In reaching this conclusion, Kelly appears to have relied heavily on his interpretation of the first two sentences in Section 8 which grants CSC the right to manage the scheduling of overtime. *Id.* He noted, for example, that CSC had the right to decide whether to schedule employees to work on a second or third scheduled day off in a workweek. *Id.* Similarly, Kelly acknowledged that pursuant to Section 8, CSC could decide not to schedule overtime on a company holiday at all. *Id.* He found, however, that pursuant to the CBA, if CDC did schedule or allow overtime on a holiday, it was required to pay the employee as set forth in Section 2 (E). *Id.* Accordingly, Kelly found that CSC had violated the CBA by unilaterally modifying the holiday premium. *Id.*

### B.     Procedural Background

CSC commenced this action on December 10, 2021. ECF No. 1. On March 16, 2022, the Union filed a motion seeking a judgment to confirm the arbitration award. ECF No. 16. On April 15, 2022, CSC cross-moved to vacate the arbitration award. ECF No. 20. Those motions were referred to the undersigned on October 31, 2022.

### DISCUSSION

### A.     Standards of Review

The enforcement of arbitration awards is governed by Section 9 of the FAA. Section 9 provides:

> [A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. . ..

6

9 U.S.C. § 9. The confirmation of an arbitration award under Section 9 of the FAA is generally "'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . ..'" *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (quoting *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006)). Indeed, it is well settled that a district court's review of an arbitration award under the FAA is extremely deferential. *See Rite Aid of N.Y., Inc. v. 1199 SEIU United Health Care Workers East,* 704 Fed. Appx. 11, 12 (2d Cir. 2017) ("A federal court's review of labor arbitration awards is among the most deferential in the law . . . We may not ourselves weigh the merits of the grievance . . ..)(internal citations omitted); *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 138-9 (2d Cir. 2007).

Nonetheless, "Section 10 of the FAA allows a court to vacate an arbitration award in four circumstances, primarily involving fraud, corruption, partiality, misconduct, or imperfect execution or exceeding of arbitral powers." *Seneca Nation of Indians*, 988 F.3d at 625 (citing 9 U.S.C. § 10). In addition, the Second Circuit has "'held that the court may set aside an arbitration award if it was rendered in manifest disregard of the law.'" *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (citing *Schwartz v. Merrill Lynch & Co.,* 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted); *see also Porzig*, 497 F.3d at 139 (courts will "vacate an award only upon finding a violation of one of the four statutory bases [enumerated in Section 10(a) of the FAA], or, more rarely, if [the court finds] a panel has acted in manifest disregard of the law."). Notably, the Second Circuit has continued to recognize the "manifest disregard of the law" standard notwithstanding the Supreme Court's holding in *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 585, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), that the statutory grounds set forth in section 10 and 11 provide the FAA's exclusive grounds for

expedited vacatur and modification. *Weiss*, 939 F.3d at 109 ("it is somewhat unclear whether the 'manifest disregard' paradigm constitutes an independent framework for judicial review, as the district court thought, or a 'judicial gloss' on the FAA's enumerated grounds in section 10(a)").

In any case, "[a] litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Id.; Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (A party seeking vacatur of an arbitration award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."). In fact, the Second Circuit has advised that arbitration awards are to be upheld under the manifest disregard standard so long as "the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract." *Schwartz*, 665 F.3d at 452 (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002)). In other words, vacatur is only warranted "when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Weiss*, 939 F.3d at 109 (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)).

**B.    CSC's Motion to Vacate**

CSC first moves to vacate the arbitration award under Section 10(a) of the FAA on two grounds: (1) that Kelly exceeded his authority by modifying the plain text of the CBA and (2) that Kelly exceeded his authority by implementing his preferred policy outcome on the parties. The Court finds both of these arguments to be unavailing. As suggested above, "[a] court can

only vacate an award for manifest disregard of a commercial contract when the arbitral award "contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 32 (S.D.N.Y. 2017) (citing *Westerbeke Corp.*, 304 F.3d at 222).

In this case, CSC argues that Kelly lacked the authority to overrule its judgment with respect to the appropriate multiplier to pay Union members for overtime. Specifically, CSC contends that Kelly's determination that it did not have the right to modify the holiday overtime multiplier completely ignores the third sentence of Article XIX, Section 8, which provides

> [CSC] has the right to modify or change any of the rules, policies or procedures set forth in this Article from time to time, provided that such modification or change applies in the same manner to similarly situated non-bargaining unit employees employed by [CSC] the State of New York, if any.

CSC further argues that the plain meaning of the word "policy" is "a definite course of action adopted for the sake of expediency, facility, etc.:" and the plain meaning of the word "rule" is "a principle or regulation governing conduct, action, procedure or arrangement." CSC's Mem. at 10. It insists, therefore, that its decision to adopt a defined course of action, that being, to change the premium multiplier that an employee receives for working on designated holidays, clearly falls within the commonly accepted definition of both the words "policy" and "rule." *Id.*

The Court agrees Kelly's interpretation of Section 8 was extremely narrow. Indeed, the first two sentences of Section 8 cover CSC's right to assign and manage overtime in its discretion and to modify or cancel scheduled overtime – the rights Kelly acknowledged in decision. As such, it is hard to imagine another overtime rule, policy or procedure that CSC could modify pursuant to the third sentence of the section given Kelly's interpretation that premium amount is not a "rule, policy or procedure." *See InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 530 (S.D.N.Y. 2005) (a "contract should be interpreted so as not to

9

render its terms nonsensical"). Nonetheless, the Court finds that Kelly acted within the scope of his authority[2] and his decision was clearly derived from the terms of the CBA. Kelly considered the language in Section 8 regarding modification and found CSC's argument that it maintained the right to change virtually any provision of Article XIX so long as it applied the changes to all non-bargaining unit employees disingenuous. As stated above, Kelly concluded that pursuant to Section 8, CSC retained the right to discontinue the scheduling of overtime on company holidays, but if it did continue to permit employees to work overtime on a holiday, it was required to pay its employees pursuant to Section 2 (E). As long as Kelly even arguably construed or applied the terms of the contract, which he did, the fact that "[the] court is convinced he committed . . . error does not suffice to overturn his decision." *Oracle Corp.,* 276 F. Supp. 3d at 32 ("[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award"); *Appel Corp. v. Katz*, 217 Fed. Appx. 3, 5 (2d Cir. 2007) (denying motion to vacate on the grounds of "manifest disregard" because "an ambiguity existed in the contract sufficient to encompass the interpretation embodied in the [award]'"); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) (court should enforce any award in which "the arbitrator is even arguably construing or applying the contract"); *compare Westerbeke Corp..,* 304 F.3d at 222 (finding vacatur to be appropriate where the award contradicts an express term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract).

Moreover, the Court finds CSC's argument concerning the grievance procedure to be without merit. Although it is true that the Union prematurely filed the demand for arbitration on

---

[2] "An arbitrator exceeds his powers when he 'rule[s] on issues not presented to [him] by the parties. " *Hoeft, III v. MVL Group, Inc.,* 343 F.3d 57, 71 (2d Cir. 2003) (quoting *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991) (citation and quotation marks omitted)).

April 26, 2021, the AAA held the matter in abeyance while the parties continued to engage in the required grievance process. CSC Mem. at 6. In fact, according to the Union, the parties jointly agreed to hold the demand for arbitration in abeyance while they conducted a final grievance step 2 meeting. Union Reply Mem. at 6. In addition, despite objecting to the fact that the Union had failed to follow the appropriate grievance procedure, CSC nonetheless agreed to engaged in a step two grievance meeting on May 12, 2021, and reviewed the facts surrounding the filed grievance. ECF No. 21-1, 105-6. Indeed, CSC considered the Union's objections discussed during the second step meeting and determined, as it had after the first meeting, that it was not violating the CBA.[3] *Id*. Accordingly, CSC was given an opportunity to review the Union's evidence and render a decision pursuant to the terms of the CBA. For these reasons, the Court finds that CSC has not met the extremely high burden needed to vacate the award and respectfully recommends denial of CSC's motion to vacate.

      **C.**     **The Union's Motion to Confirm the Arbitration Award**

As discussed above, the Union has also filed a motion seeking to confirm and enforce the opinion and award of Kelly dated November 29, 2021. Among other things, the Union seeks an order requiring CSC to comply with the award's directive that it make all Union members whole who were paid the incorrect holiday overtime premium pay rate and, going forward, to pay Union members at the holiday overtime premium pay rate set forth in Section 2(E) of Article XIX of the CBA. Fridell Aff. ¶¶ 3-4. Upon the denial of a motion for vacatur, the Court must confirm an arbitration award. *See* 9 U.S.C. § 9. Therefore, the undersigned respectfully recommends that the Arbitration Award be confirmed and reduced to a judgment.

---

[3] CSC also engaged in the arbitrator selection process, participated in a pre-hearing phone conference with Kelly, submitted its Exhibits for the arbitration hearing, engaged in the arbitration, and filed a post-hearing brief. *See* Versocki Dec., Exs. D and E.

However, to the extent the Union's motion seeks an award of attorneys' fees, the undersigned respectfully recommends that that portion of the motion be denied. "'The FAA does not provide for an award of attorney's fees and expenses for arbitration-confirmation proceedings, [although] a court remains authorized to enter such an award pursuant to its inherent equitable powers.'" *Chongqing Loncin Engine Parts Co. v. New Monarch Mach. Tool, Inc.*, 552 F. Supp. 3d 341, 350 (N.D.N.Y. 2021)(citing *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 106 (W.D.N.Y. 2019)). As a general rule, courts have awarded attorneys' fees under their inherent authority in instances where "a challenger refuses to abide by an arbitrator's decision *without justification*." *Id.* (emphasis added). That is not the case here. Although the Court has determined that the award should be confirmed, CSC's arguments were far from frivolous. *See Seneca Nation of Indians*, 420 F. Supp. 3d at 106 ("Such awards may be made, for example, when a party pursues a frivolous course.").

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
December 27, 2022

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge