```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
CSC HOLDINGS, LLC, a wholly
owned subsidiary of ALTICE, USA,
                                        ADOPTION ORDER
            Plaintiff,                  21-CV-6848(JS)(ARL)

     -against-

INTERNATIONAL BROTHERHOOD OF
ELECTRICIANS, LOCAL 1049,

            Defendant.
---------------------------------X
APPEARANCES
For Plaintiff:      Scott Budow, Esq,
                    Erica Eden Frank, Esq.
                    Kauff McGuire & Margolis LLP
                    950 Third Avenue, 14th Floor
                    New York, New York  10022

For Defendant:      Matthew F Hromadka, Esq,
                    James W. Versocki, Esq.
                    Archer, Byington, Glennon & Levine LLP
                    534 Broadhollow Road, Suite 430
                    Melville, New York  11747
```

SEYBERT, District Judge:

CSC Holdings, LLC, a wholly owned subsidiary of Altice, USA ("CSC" or "Plaintiff"), commenced this action against International Brotherhood of Electricians, Local 1049 (the "Union" or "Defendant") to vacate an arbitration award regarding CSC's authority to unilaterally modify the holiday overtime premium owed to employees under the parties' collective bargaining agreement ("CBA"). (See generally Compl., ECF No. 1.) On December 27, 2022, Magistrate Judge Arlene R. Lindsay issued her Report and Recommendation ("R&R") on the Union's motion to confirm the

arbitration award (Def. Mot., ECF No. 16) and CSC's cross-motion to vacate the award (Pl. Cross-Mot., ECF No. 20). (See generally R&R, ECF No. 26.) In the R&R, Judge Lindsay recommends confirming the arbitration award but denying the Union's request for attorney's fees. (Id. at 1, 12.)

Pending before the Court are CSC's objections to the R&R and the Union's responses thereto. (Obj., ECF No. 27; Resp., ECF No. 28.) The Union did not file any objections to the recommendation as to its request for attorneys' fees. For the following reasons, CSC's objections are OVERRULED and the R&R is ADOPTED in its entirety.

BACKGROUND

I. Factual Background

The Court presumes the parties' familiarity with the factual background as set forth in Judge Lindsay's R&R, to which no parties object, and incorporates her summary herein by reference. (See R&R at 1-6.) The Court recites only those facts necessary to resolve the instant motions.

CSC and the Union are parties to a CBA. (CBA, ECF No. 1-3.) Article XIX of the CBA sets forth the following provisions relevant to holiday overtime policies and procedures:

Section 2: Overtime Pay Rates.

. . . .

(E) Overtime on a Holiday. When an employee works on a holiday listed in the Company's annual Holiday Schedule, the employee will receive twice the employee's regular hourly rate (i.e., double time) for all hours worked on the holiday, as well as eight (8) hours of holiday pay at the regular rate of pay. For those employees whose regularly scheduled workweek does not include the holiday, the holiday will be rescheduled for observation on another day that week. If an employee is required to work on the day the holiday was rescheduled for observance, the holiday pay rates as stated in this paragraph will apply.

. . . .

Section 8: Management of Overtime. The Company shall assign and manage overtime in its discretion in accordance with the provisions set forth in this Article. The Company may also modify or cancel scheduled overtime in its discretion. The Company has the right to modify or change any of the rules, policies or procedures set forth in this Article from time to time, provided that such modification or change applies in the same manner to similarly situated non-bargaining unit employees employed by the Company in the State of New York, if any. In the event the Company intends to modify or change any of the rules, policies or procedures set forth in this Article, the Company shall provide the Union with thirty (30) calendar days' advanced notice of the proposed modification or change. Within this thirty (30) day notice period, the Union may request a meeting with the Company, at which the Company and the Union shall discuss any suggestions the Union may have with respect to the proposed modification or change and/or any alternatives the Union may suggest. At the expiration of the thirty (30) days referred to above, the final decision

>  with respect to the modification or change and any alternatives proposed shall be that of the Company.

(Id. Art. XIX, §§ 2(E), (8).)  The CBA's arbitration provisions are contained in Article XXIX:

> Section 1: If a grievance which is subject to arbitration under the terms of this Agreement is properly appealed to arbitration, representatives of the Company and the Union shall select an arbitrator from a panel requested and received from the American Arbitration Association (AAA) in New York in accordance with the Labor Arbitration Rules of AAA, inclusive of Rule 10, as such rules may be amended from time to time.  The Arbitration shall be conducted pursuant to AAA rules.
>
> Section 2. The decision of the arbitrator shall be final and binding on [CSC], the Union and the bargaining unit employee(s) without either party waiving its right to a court review.  The arbitrator shall have no authority to expand the grievance beyond the written grievance the parties have submitted for arbitration.  The arbitrator shall only have the authority to determine whether [CSC] has violated a specific provision of this Agreement and if so, what shall be the remedy. The arbitrator may not overrule the judgment of [CSC] with respect to any matter on which the terms of this Agreement have not expressly limited the judgment of [CSC]. The arbitrator shall have no right to amend, modify, nullify, ignore, add to or imply things into the provisions of this Agreement, or impose upon any party hereto a limitation or obligation not provided for in this Agreement. . . .

(Id. Art. XXIX, §§ 1, 2.)

Based on these provisions, when working on a holiday, CSC's employees were entitled to receive double-time pay, i.e.,

4

twice their hourly rate of pay for all hours worked, in addition to eight hours of holiday pay at the regular rate. (Id. Art. XIX, § 2(E).) Relying upon Article XIX, Section 8, CSC intended to unilaterally reduce the double-time premium to 1.5 times employees' regular rate of pay, to which the Union objected. (R&R at 3-4.) CSC notified the Union of this proposed modification more than 30 days in advance of its May 1, 2021 effective date and offered to meet with the Union to discuss the change. (Id. at 4.) The Union did not agree to a meeting with CSC and proceeded to file a grievance on April 6, 2021, arguing the change violates the CBA. (Id. at 5.) The parties then engaged in a "Step One" grievance meeting required under the CBA. (Id.; see CBA Art. XXVIII, § 2 (defining Step One).) Before the parties engaged in a "Step Two" meeting under the CBA, the Union sent the American Arbitration Association ("AAA") a demand for arbitration; however, the AAA held the matter in abeyance until the parties fulfilled Step Two. (R&R at 5; see CBA Art. XXVIII, § 2 (defining Step Two).)

An arbitration hearing was ultimately conducted on September 10, 2021. (R&R at 5.) On November 29, 2021, the arbitrator, Randall M. Kelly ("Kelly"), issued an award sustaining the Union's grievance. (Id. at 5-6; Arbitration Opinion & Award, ECF No. 1-4, at 6-7.) As stated by Judge Lindsay in her R&R:

5

> Of particular note, Kelly found that while the CBA affords CSC the right to modify or change "any of the rules, policies or procedures" set forth in Article XIX, the holiday overtime multiplier was not one of those "rules, policies or procedures." In reaching this conclusion, Kelly appears to have relied heavily on his interpretation of the first two sentences in Section 8 which grants CSC the right to manage the scheduling of overtime. He noted, for example, that CSC had the right to decide whether to schedule employees to work on a second or third scheduled day off in a workweek. Similarly, Kelly acknowledged that pursuant to Section 8, CSC could decide not to schedule overtime on a company holiday at all. He found, however, that pursuant to the CBA, if CDC did schedule or allow overtime on a holiday, it was required to pay the employee as set forth in Section 2(E). Accordingly, Kelly found that CSC had violated the CBA by unilaterally modifying the holiday premium.

(R&R at 5-6 (internal citations omitted).) Thereafter, the instant case was commenced, and the parties filed competing motions to confirm and to vacate the arbitration award.

II. <u>Judge Lindsay's Report & Recommendation</u>

In her R&R recommending the Union's motion to confirm the arbitration award be granted, Judge Lindsay rejected CSC's arguments which suggested Kelly exceeded his authority by modifying the plain text of the CBA and by implementing his preferred policy outcome on the parties. (<u>Id.</u> at 8.) Although Judge Lindsay found that Kelly acted within the scope of his authority and reached his decision based upon the terms of the

6

CBA, she agreed with CSC that Kelly's interpretation of Section 8 "was extremely narrow":

> Indeed, the first two sentences of Section 8 cover CSC's right to assign and manage overtime in its discretion and to modify or cancel scheduled overtime – the rights Kelly acknowledged in decision. As such, it is hard to imagine another overtime rule, policy or procedure that CSC could modify pursuant to the third sentence of the section given Kelly's interpretation that premium amount is not a "rule, policy or procedure."

(Id. at 9.)  As long as Kelly "even arguably construed or applied the terms of the contract, which he did," Judge Lindsay stated "the fact that [the] court is convinced he committed . . . error does not suffice to overturn his decision." (Id. at 10 (alteration and omission in original) (quoting Oracle Corp. v. Wilson, 276 F. Supp. 3d 22, 32 (S.D.N.Y. 2017)).)

Next, Judge Lindsay rejected CSC's argument which sought vacatur of the award based upon the Union's failure to complete Step Two of the grievance procedure before filing a demand for arbitration.  (Id. at 10-11.)  Although the Union "prematurely filed the demand," Judge Lindsay found "the parties jointly agreed to hold the demand for arbitration in abeyance while they conducted" a Step Two meeting.  (Id.)  CSC agreed to participate in a Step Two meeting, considered the Union's objections, and overruled them.  (Id. at 11.)  Subsequently, CSC engaged in the arbitrator selection process, participated in a pre-hearing phone

7

conference with Kelly, submitted its exhibits for the hearing, engaged in the arbitration, and filed a post-hearing brief. (Id. at 11 n.3.)

As a final matter, Judge Lindsay rejected the Union's request for attorneys' fees. (Id. at 12.) While acknowledging the court's inherent authority to issue fee awards where challengers refuse to abide by an arbitrator's decision "without justification," Judge Lindsay deemed CSC's vacatur arguments "far from frivolous." (Id.)

## ANALYSIS

### I. Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); FED. R. CIV. P. 72(b)(3).

### II. Discussion

CSC's objections to the R&R are threefold: (1) the R&R confirms a narrow interpretation of Section 8 that nullifies CSC's

8

unilateral ability to modify overtime rules, policies, or procedures; (2) the R&R applies an incorrect standard regarding the scope of the arbitrator's authority; and (3) the R&R ignores the Union's failure to engage in Step 2 of the parties' grievance procedure before sending the AAA a demand letter. (Obj. at 3-7.) The Court reviews each of these objections de novo.

    A.    Interpreting Section 8

Arbitrator's decisions are afforded significant deference, especially in the labor context. See Rite Aid of N.Y., Inc. v. 1199 SEIU United Healthcare Workers E., 704 F. App'x 11, 12 (2d Cir. 2017) ("A federal court's review of labor arbitration awards is 'among the most deferential in the law.'" (quoting Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016))). A court's review of arbitration awards is limited to ensuring that "the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" Nat'l Football League, 820 F.3d at 532 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). "[E]ven if an arbitrator makes mistakes of fact or law, [a court] may not disturb an award so long as [the arbitrator] acted within the bounds of his bargained-for authority." Rite Aid, 704 F. App'x at 12 (quoting Nat'l Football League, 820 F.3d at 532). An arbitrator acts within the scope of

9

his authority if the award "draws its essence" from the CBA and is supported by a "barely colorable" interpretation of the CBA. Id. (quoting Nat'l Football League, 820 F.3d at 537, 539). An arbitrator exceeds this authority if he dispenses his "own brand of industrial justice." Id. (quoting Nat'l Footbal League, 820 F.3d at 537).

CSC argues that Kelly's interpretation of Section 8 renders its rights meaningless under that provision, which does not support even a barely colorable justification for confirming the award. (See Obj. at 4.) CSC is correct that contracts should generally be construed to avoid rendering provisions "essentially meaningless," and that Kelly's interpretation of Section 8 significantly reduces its "right to modify or change any of the rules, policies or procedures set forth" in Article XIX. (See id. at 3 (citing State St. Glob. Advisors Tr. Co. v. Visbal, 431 F. Supp. 3d 322, 338 (S.D.N.Y. 2020)).) However, CSC ignores that the principles underpinning the review of arbitration awards "do not require perfection in arbitration awards." Nat'l Football League, 820 F.3d at 532. Indeed, "even if an arbitrator makes mistakes of fact or law," the award may not be disturbed so long as the arbitrator acted within the scope of his authority. Id. "The potential for those mistakes is the price of agreeing to arbitration. . . . '[I]t is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's

10

decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.'" Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 572-73 (2013) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)).

Kelly's interpretation of Section 8, though stringent, is clearly derived from the text of the CBA, particularly, the first two sentences of that same provision (see R&R at 9-10), as well as the provision's title, "Management of Overtime" (see Arbitration Opinion & Award at 6). The Court shares Judge Lindsay's view that Kelly's interpretation of Section 8 is extremely narrow. Beyond altering the scheduling of overtime for employees, the Court has a difficult time envisioning another scenario where CSC maintains the right to modify or change any of the "rules, policies or procedures" in Article XIX. (See R&R at 9; Arbitration Opinion & Award at 6.) Although this construction hampers CSC's unilateral authority to amend each of the provisions set forth in Article XIX, it has not completely eliminated it. Thus, even if the Court disagrees with Kelly's interpretation, "the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." Oxford, 569 U.S. at 573. On this basis, the Court does not find that Kelly exceeded his powers and overrules CSC's first objection to the R&R. See id. ("The arbitrator's construction

11

holds, however good, bad, or ugly."); see also Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." (citing Misco, 484 U.S. at 36)).

    B.   Scope of the Arbitrator's Authority

CSC's second objection is that the R&R applied an incorrect legal standard regarding the scope of the arbitrator's authority. (Obj. at 4-5.) CSC's framing of this argument is misleading because it concedes that Judge Lindsay considered "one way" in which an arbitrator can exceed its authority, i.e., by ruling on issues not properly presented. (Id. (citing R&R at 10 n.2).) Yet, CSC argues that Judge Lindsay neglected to consider that this authority can be exceeded where an arbitrator "rule[s] on issues properly presented to them, but in a manner that directly contradicts the CBA." (Id. at 5.)

The Court disagrees. In fact, Judge Lindsay acknowledged a Second Circuit decision which found vacatur to be appropriate "where the award contradicts an express term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." (R&R at 10 (citing Westerbeke Corp. v. Daihatsu Motor Co., 304

12

F.3d 200, 222 (2d Cir. 2002)).) As acknowledged by the Second Circuit in Westerbeke and by Judge Lindsay in her R&R, an arbitration award must stand so long as the arbitrator provides "even a barely colorable justification for his or her interpretation of the contract." Westerbeke, 304 F.3d at 222. (See R&R at 8-10.) For the reasons set forth in the preceding section, the Court has already determined Kelly's interpretation of the CBA passes muster under the lenient standard of review applicable here.[1] Accordingly, CSC's second objection is OVERRULED.

---

[1] The Court also notes that the two cases cited by CSC in support of its second objection are inapposite. (Obj. at 5 (first citing Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 494 F.3d 133, 140 (2d Cir. 2007); then citing Bragg v. Kalikow Fam. P'ship LP, No. 19-CV-8801, 2020 WL 2086014, at *7 (S.D.N.Y. Apr. 30, 2020).) In Porzig, the Second Circuit vacated a portion of an arbitration award where the arbitral panel "was plainly without jurisdiction" to issue the attorney's fee award at issue. Porzig, 494 F.3d at 140. To the extent CSC disputes Kelly's jurisdiction over the Union's grievance, i.e., the arbitrability of the instant dispute, that argument is rejected for the reasons set forth infra. (See infra Section II.C.) Then as to Bragg, CSC refers the Court to the portion of that decision which summarizes Leed Architectural Products, Inc. v. United Steelworkers of America, Local 6674, 916 F.2d 63, 65 (2d Cir. 1990). See Bragg, 2020 WL 2086014, at *6-7. Citing Leed, the Bragg Court noted the Second Circuit has vacated an arbitration award where the arbitrator did "what he considered right" and imposed a remedy for the employee-grievants that violated the express terms of the CBA at issue. Bragg, 2020 WL 2086014, at *6 (citing Leed, 916 F.2d at 66-67). The parties do not even argue that the remedy imposed by Kelly, i.e., a declaration that the CBA was violated, is beyond the scope of his authority under the CBA.

C. <u>Procedural Deficiency with the Union's AAA Demand</u>

CSC's third and final objection to the R&R stems from the Union's failure to comply with "Step Two" of the CBA's grievance procedure prior to filing its AAA demand. (<u>See</u> Obj. at 5-6.) CSC contends that the Union's failure to comply with Step Two should result "in the abandonment of the grievance and . . . render the [Union's] dispute nonarbitrable." (<u>See</u> CBA, Art. XXVIII, § 3.) Further, CSC does not believe it should "be punished for preserving its rights on the substantive merits of the grievance by participating in the grievance and arbitration process despite the Union's failure to adhere to the CBA's procedural requirements." (Obj. at 7.)

The Court agrees with the Union that this argument is disingenuous and finds that CSC is estopped from raising this procedural defect here for two reasons. First, the record before this Court does not indicate that CSC even raised this during the arbitration proceedings. Second, as detailed by Judge Lindsay in her R&R, CSC fully and voluntarily participated in all aspects of the underlying arbitration. (R&R at 10-11.) CSC even consented to the AAA holding the arbitration in abeyance to allow the parties to fulfill their Step Two obligations. (<u>See</u> Resp. at 5.) Although CSC states that its "only alternative would have been . . . to refuse to engage in the arbitration process" and "[p]lace all of its eggs in the procedural deficiency basket" (<u>see</u> Obj. at 7), CSC

14

cannot have its cake and eat it too. CSC's tactical decision to not challenge the arbitrability of the Union's grievance below and to voluntarily participate in the arbitration process constitutes a waiver of its ability to raise such an objection here. See Sokolowski v. Metro. Transp. Auth., 723 F.3d 187, 191 (2d Cir. 2013) ("In an arbitration case, 'if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration.'" (quoting Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 368 (2d Cir. 2003))); see also Sistem Muhendislik InSaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic, 741 F. App'x 832, 834 (2d Cir. 2018) ("As to the Republic's first argument, we agree with the district court that the Republic waived its right to challenge the jurisdiction of the ICSID AF tribunal. At no time during the arbitration proceedings did the Republic argue that ICSID AF proceedings were outside the scope of the BIT."). Accordingly, CSC's third objection is OVERRULED.

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Plaintiff's objections are OVERRULED and the R&R is ADOPTED IN ITS ENTIRETY. The Union's motion (ECF No. 16) is GRANTED IN PART to the extent it seeks to confirm the arbitration award and DENIED IN PART to the extent it seeks attorneys' fees. CSC's cross-motion

15

(ECF No. 20) to vacate the arbitration award is DENIED. The Clerk of Court is directed to enter judgment accordingly and to mark this case CLOSED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March 20, 2023
         Central Islip, New York